Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
212.228.9666
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA LONDON,<br><br>Plaintiff,<br><br>-against-<br><br>BLUE PEN, INC. and SCOTT DRAKE,<br><br>Defendants. | 05 Civ. 7223<br><br>COMPLAINT<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

Plaintiff Melissa London, by her attorneys, Bantle & Levy LLP, alleges for her complaint against defendants as follows:

**NATURE OF THE ACTION**

1. This is an action for employment discrimination based on sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law §290 et seq., (the "Executive Law"), and the New York City Administrative Code §8-101 et seq., (the "Administrative Code"). Plaintiff also asserts a claim for unpaid wages pursuant to New York State Labor Law §190, et. seq. (the "Labor Law") and New York common law. Plaintiff seeks declaratory and injunctive relief and damages.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e et seq., as amended, and 28 U.S.C. §§ 1331 and 1332. In addition, plaintiff asserts state and city anti-discrimination law claims under this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. A substantial part of the unlawful acts and discriminatory practices alleged herein were committed within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. §1391(b).

4. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5(f)(3), have occurred or been complied with:

a. A charge of employment discrimination on the basis of race was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which plaintiff complains in this action.

b. A notification of right to sue was issued by the EEOC on or about May 31, 2005.

c. This complaint has been filed within 90 days of receipt of the EEOC's notification of right to sue.

5. Plaintiff has served a copy of this complaint with the Corporation Counsel for the City of New York and with the New

York City Commission on Human Rights as required under New York City Administrative Code, §8-502.

**PARTIES**

6. Plaintiff Melissa London ("London"), is a [thirty-one] year old female citizen of the United States and is a resident of New York, New York.

7. London was employed by defendant Blue Pen, Inc. ("Coach" or the "Company") from on or about December 1, 2003 through the date of her unlawful termination on June 24, 2004.

8. Upon information and belief, defendant Blue Pen is a California corporation with its principal place of business at 2305 E. 52nd Street, Vernon, California.

9. Blue Pen sells denim blue jeans to retail stores within the United States.

10. At all times relevant herein, Blue Pen maintained offices at 241 West 37th Street, New York, New York 10018 (the "New York Office").

11. At all times relevant herein, Blue Pen is a person within the meaning of §701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a). Blue Pen also is a person within the meaning of New York Executive Law § 292(1) and New York City Administrative Code § 8-102(1).

12. At all times relevant herein, Blue Pen has been an employer engaged in industry affecting commerce within the

meaning of §701(h) of the Civil Rights Act of 1964, 42 U.S.C. §2000e-(h).

13. At all times relevant herein, Blue Pen is an employer that has employed more than 50 employees.

14. Scott Drake ("Drake") is a male citizen of the United States and, upon information and belief, a resident of the State of Ohio.

15. At all relevant times herein, Drake was an agent of Blue Pen and a management employee within the meaning of 42 U.S.C. § 2000e(f).

16. As a management employee of defendant, Drake had authority to act on behalf of Blue Pen in the hiring and firing of employees such as plaintiff.

**STATEMENT OF FACTS**

17. Plaintiff commenced employment with Blue Pen on December 1, 2004 as an Account Executive in Blue Pen's New York Office.

18. Plaintiff was hired by defendant Drake, who throughout the hiring process and at all relevant times thereafter, held himself out as President and part owner of Blue Pen's Blue-2 division.

19. Plaintiff was the first Account Executive hired by Blue Pen to work in its fledgling Blue-2 division.

20. As an Account Executive in the Blue-2 Division,

plaintiff’s responsibilities included sales of Blue-2's line of denim clothing to boutiques and department stores throughout the northeast portion of the United States.

21. Pursuant to her employment agreement with Blue Pen, plaintiff’s compensation as an Account Executive consisted of an annual base salary of $36,000, plus commissions equal to two percent of sales made to speciality stores and equal to one percent of sales made to so-called “major accounts”.

22. At all times relevant herein, plaintiff fully performed her duties as an Account Executive and was responsible for sales of Blue-2's clothing both to speciality stores and major accounts.

23. Throughout her employment at Blue Pen, plaintiff worked closely with and was supervised by Drake.

24. At all times relevant herein, Drake worked primarily from an office in Ohio, but made frequent trips to the New York Office.

25. As her direct supervisor, Drake monitored plaintiff’s sales activities, occasionally accompanied her on sales calls and from time-to-time assigned her to attend industry functions. [more indicia of supervision]

26. From virtually the inception of her employment at Blue Pen in June 2004, plaintiff was subjected to inappropriate sexual interest and comments by Drake.

27. Drake laced his professional interactions with plaintiff with thinly-veiled come-ons and sexual innuendo.

28. Drake frequently commented on plaintiff's body parts and routinely offered unsolicited evaluations of her physical appearance.

29. For example, Drake frequently offered unsolicited evaluations of how plaintiffs "ass" looked in the Company's blue jeans.

30. Commencing in our about April 2004, Drake made direct attempts to start a sexual relationship with London and became increasingly hostile towards her as she repeatedly rebuffed his sexual advances.

31. In or about March 2004, Drake directed plaintiff to attend a major industry event to beheld in Los Angeles, California in April 2004 (the "L.A. Market").

32. Drake also was scheduled to attend the L.A. Market.

33. In the weeks leading up to the L.A. Market, Drake made several inappropriate comments to plaintiff about their upcoming time together in Los Angeles.

34. For example, Drake told plaintiff that he had cancelled her room reservation so that they could share a room together in Los Angeles.

35. Drake also instructed plaintiff to make sure not

to book a room for another Blue Pen employee attending the L.A. Market near "our room" so as to ensure that they would have sufficient privacy to conduct an illicit affair.

36. Plaintiff took appropriate steps to ensure that she was booked into a separate room from Drake.

37. Drake also told plaintiff that she should be prepared to meet him at the hotel pool in the mornings for a swim, insisting that she "wear a bikini".

38. At or about the end of the first day of the L.A. Market, Drake requested that plaintiff meet him for dinner purportedly so that they could discuss business matters.

39. So as not to be deemed insubordinate, plaintiff acquiesced in Drake's request.

40. Plaintiff and Drake met for dinner at the restaurant in the hotel in which they both were staying.

41. At dinner, Drake told plaintiff that he "was obsessed" with her and professed his desire to become romantically involved.

42. Among other comments, Drake told plaintiff: "I have this little problem, its you"; "I'm crazy about you and have been since you started"; "I can't stop thinking about you -- you're gorgeous"; and "Since the beginning I've tried to make myself hate you, but I can't".

43. Plaintiff was both personally and professionally

offended and repulsed by Drake's conduct.

44. Throughout dinner, plaintiff firmly rebuffed Drake's advances, repeatedly reminding Drake that they both were married and that a relationship would be inappropriate because he was her boss.

45. After dinner, Drake followed plaintiff into the hotel elevator she was taking up to her hotel room.

46. In the hotel elevator, Drake pulled plaintiff into him and kissed her.

47. Plaintiff promptly pulled away from him, left the elevator and returned to her hotel room alone.

48. The following day, Drake kept his distance from plaintiff at the L.A. Market.

49. Two days after their dinner, however, Drake approached plaintiff at the L.A. Market and began to discuss their dinner.

50. Over plaintiff's protestations, Drake told plaintiff that he did not regret his actions "the other night" and that he had "meant everything he said".

51. Plaintiff looked at Drake with revulsion and walked away.

52. After the L.A. Market, plaintiff returned to work in the New York Office and Drake returned to Ohio.

53. Nonetheless, in the following weeks, Drake became

increasingly hostile in his interactions with plaintiff.

54. Drake berated plaintiff in front of her colleagues during a conference call and told her to “shut the fuck up” during a strategy discussion about a potential account plaintiff was preparing to pitch.

55. In May 2004, Drake came to New York to attend a trade show -- the first time since the L.A. Market that Drake and plaintiff were together in person.

56. During his time at the New York Office, plaintiff’s conduct toward plaintiff became increasingly sexualized and hostile.

57. On one occasion, Drake approached plaintiff at a New York trade show, put his hands on her hips and roughly pulled down on the Blue 2 jeans plaintiff was wearing for the show.

58. When plaintiff pulled away, Drake leered at her and told her, “I could pull these jeans right off you”.

59. On the last day of the New York show, Drake launched into an unprovoked verbal tirade at plaintiff.

60. Over the next few weeks, Drake remained hostile to plaintiff and routinely failed to provide her supervisory support in the performance of her duties.

61. On or about June 24 2004, plaintiff was abruptly terminated by Blue Pen.

62. The reason given for her termination was that

plaintiff purportedly "hadn't done enough with [her] territory".

63. As of the date of her termination, plaintiff had received no disciplinary warnings or negative feedback regarding her sales performance from Blue Pen.

64. At or about the time of her termination, plaintiff was the top selling Blue 2 Account Executive in the New York Office.

65. Just weeks prior to her termination, plaintiff had received an email correspondence from Blue Pen's International Sales Manager Marlo Williams in which Ms. Williams described plaintiff as "an asset to the company" and encouraged plaintiff to remain enthusiastic about the Company despite the recent resignation of a colleague with whom plaintiff had been friendly.

66. Blue Pen's asserted reason for termination was pretextual and designed to masks Blue Pen's discriminatory motive.

67. During her employment and subsequent to her termination, Blue Pen failed to pay plaintiff certain commissions due and owing for sales made to her accounts.

68. Following her termination, plaintiff made due demand for payment of all commissions due and owing to her.

69. Despite due demand, Blue Pen failed to make full payment of the commissions to which plaintiff is entitled.

**COUNT I**

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 69 as if they were fully restated herein.

71. Blue Pen has discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

72. As a result of Blue Pen's discrimination against her, plaintiff has suffered damage, including without limitation, deprivation of income and benefits, the unlawful termination of her employment, as well as emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to her reputation and career.

**COUNT II**

73. Plaintiff repeats and realleges the allegations allegation set forth in paragraphs 1 through 72 above.

74. As a result of the aforementioned actions, Blue Pen has discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of New York Executive Law § 290 et seq.

75. As a result of the aforementioned actions, Drake has violated the New York Executive Law §290 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

76. As a result of defendants' discrimination against

her, plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

**COUNT III**

77. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 76 above.

78. As a result of the aforementioned actions, Blue Pen has discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of the New York City Administrative Code § 8-101, et seq.

79. As a result of the aforementioned actions, Drake has violated the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

80. As a result of defendants' discrimination against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

**COUNT IV**

81. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 80 above.

82. Defendants, by their aforementioned acts, did intentionally, willfully, and knowingly cause plaintiff to suffer mental, emotional and physical distress, pain and suffering, damage to name and reputation, monetary damages.

83. The acts and conduct of defendants constitute intentional infliction of emotional distress under the laws of the State of New York.

84. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

**COUNT V**

85. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 83 above.

86. Blue Pen has failed to pay plaintiff commissions due and owing in an amount to be determined at trial.

87. Blue Pen's failure to pay plaintiff commissions due and owing is wilful and intentional.

88. Blue Pen's failure to pay plaintiff separation pay violates New York Labor Law Section 190 et. seq.

89. As a result of Blue Pen's wilful refusal and failure to pay plaintiff his separation pay, plaintiff is entitled, pursuant to New York Labor Law Section 190 et. seq., to liquidated damages in the amount of 25% of the unpaid separation pay, plus interest.

90. As a result of Blue Pen's willful refusal and failure to pay plaintiff his separation pay, plaintiff is entitled, pursuant to New York Labor Law Section 190 et. seq., to his costs and attorneys' fees in this action.

**COUNT VI**

91. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 90 above.

92. In failing to pay plaintiff the commissions due and owing Blue Pen has breached its contract with plaintiff.

93. As a result of Blue Pen's contract breaches, plaintiff has suffered monetary damages in an amount to be determined at trial.

**COUNT VII**

94. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 96 above.

95. Plaintiff rendered services on behalf of Blue Pen for the period from December 2003 through June 2004.

96. Blue Pen accepted and benefitted from plaintiff's services.

97. Blue Pen has not adequately compensated plaintiff for the value of the services she rendered on its behalf.

98. As a result of Blue Pen's aforesaid conduct, Blue Pen has been unjustly enriched in an amount to be determined at trial.

WHEREFORE, plaintiff Melissa London respectfully requests that this Court grant judgment for plaintiff and award plaintiff the following relief against defendants:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated plaintiff’s rights as secured by Title VII Title VII of the Civil Rights Act of 1964,42 U.S.C. §2000e et seq., the New York Executive Law, § 290 et seq., and the New York City Administrative Code, § 8-101, et seq.;

(2) Issue an injunction ordering plaintiff reinstated to the highest position to which she was and would be entitled with salary, benefits, job responsibilities and other terms of employment commensurate with such position;;

(3) Order defendants to make plaintiff whole by providing: (a) back pay with interest based on plaintiff's appropriate compensation had she not been discriminated against; (b) front-pay; and (c) reimbursement for lost pension, social security, experience, training opportunities, and other benefits; in an amount to be shown at trial but believed to be not less than $500,000.

(4) Grant plaintiff compensatory damages for her emotional pain and suffering, inconvenience, mental anguish and humiliation, and damage to reputation and career in an amount not less than $1,000,000;

(5) Grant plaintiff punitive damages in an amount not

less than $2,000,000.00;

(6) Grant plaintiff damages for unpaid wages, plus liquidated damages, attorneys' fees, and costs pursuant to the New York State Labor Law;

(7) Grant plaintiff her attorneys' fees, costs and disbursements; and

(8) Grant plaintiff such other and further relief to the plaintiff as this Court may deem just and proper.

Dated: New York, New York
August 9, 2005

BANTLE & LEVY LLP

By:____________________________
Robert L. Levy

817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff